UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2018 FEB -6 A 11: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| DARCY CORBITT, DESTINY CLARK, and JOHN DOE, | ) ) ) Civil Action No. 2:18-cv-91 ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| HAL TAYLOR, in his official capacity as Secretary of the Alabama Law Enforcement Agency; Colonel CHARLES WARD, in his official capacity as Director of the Department of Public Safety; DEENA PREGNO, in her official capacity as Major of the Driver License Division, and JEANNIE EASTMAN, in her official capacity as Driver License Supervisor in the Driver License Division | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF JOHN DOE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER

Plaintiff John Doe, by and through his undersigned counsel, respectfully moves this Honorable Court for leave to proceed anonymously. Plaintiff, a transgender individual, is challenging government action and belongs to a group that has long been subject to discrimination, hostility, and violence. Moreover, a person's transgender status and medical condition are sensitive and highly personal. Accordingly, forcing John Doe to disclose his identity in public court records would require him to make public deeply personal information and subject him to the possibility of significant harm.

Plaintiff has no objection to providing his actual name to the Defendant and this Court, but requests that, before he does so, the Court enter a protective order barring further

dissemination of his name and requiring that any documents containing his name be filed under seal.

This motion is made pursuant to Rule 10(a) of the Federal Rules of Civil Procedure and the other authorities cited below. In support of this motion, Plaintiff states as follows:

1. While Rule 10(a) generally requires that the complaint "name all parties," the Eleventh Circuit has allowed anonymous filings if the plaintiff possesses a "substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). *See also Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011).

2. In *Frank*, the Eleventh Circuit instructed that plaintiffs should be allowed to proceed anonymously in situations "involving matters of a highly sensitive and personal nature." 951 F.2d at 324. Some factors that the courts have considered are whether the plaintiff is challenging governmental activity, and whether the plaintiff will be required to disclose information of the utmost intimacy. *Plaintiff B*, 631 F.3d at 1316.

3. Here, the Plaintiff is challenging government activity. His challenge to the burdens placed on transgender people by the Alabama Law Enforcement Agency's License Policy may subject him to criticism from members of the public who do not understand what it means to be transgender or are intolerant towards transgender people for other reasons.

4. Second, the information disclosed in the Complaint, and information likely to be disclosed during discovery, is highly personal. Plaintiff's involvement in this case will expose his transgender status, which is private, sensitive information about the difference in his assigned sex at birth and gender identity. As the Second Circuit has explained: "the excruciatingly private

and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). Other courts have come to the same conclusion. *E.g., K.L. v. State*, No. 3An-11-05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is entitled to protection."); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that disclosure of transgender status "creates a very real threat to Plaintiffs' personal security and bodily integrity"). Furthermore, the information at issue concerns the Plaintiff's medical conditions, gender dysphoria and depression, which would be released to the public if this motion is not granted.

5.  Moreover, persons publicly identified as transgender are at risk of hostility, harassment, and even injury: "transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell*, 175 F.3d at 111; *see also Brocksmith v. United States*, 99 A.3d 690, 698 n. 8 (D.C. 2014) ("The hostility and discrimination that transgender individuals face in our society today is well documented."); *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity"); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017) ("transgender people as a class have historically been subject to discrimination"); *Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*, 208 F. Supp. 3d 850, 874 (S.D. Ohio 2016) (same); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (same); *Doe 1 v. Trump*, No. CV 17-1597 (CKK), 2017 WL 4873042, at *27 (D.D.C. Oct. 30, 2017) (same).

6. Because of the stigma associated with being transgender and the risks transgender people face due to bias against them, courts allow transgender plaintiffs to proceed under pseudonyms. *See, e.g., In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009) (shielding the publication of a transgender individual's name in seeking a court order regarding a name change based upon his "right to feel threatened for his personal safety in the event his transgender status is made public," even though he had not personally experienced any violence based on his gender identity).

7. The Plaintiff's fears of retaliation are based on the widespread misunderstanding of, or hostility towards, transgender persons, which has resulted in discrimination and harassment, as well as the prevalence of violence against transgender individuals. The threat of physical harm to transgender individuals due to the disclosure of their transgender status is real. As one court recognized, "there exist numerous documented instances of those targeted for violence based on their. . . gender identity." *In re E.P.L.*, 891 N.Y.S.2d at 621; *see also Sacklow v. Betts*, 450 N.J. Super. 425, 435, 163 A.3d 367, 374 (N.J. Ch. Div. 2017). Stigma, discrimination, and violence against transgender people have a long history, and have shown signs of increasing in the past year. According to the Harris Poll, U.S. attitudes toward LGBT people became less accepting in the last year. *Accelerating Acceptance 2018*, https://www.glaad.org/publications/accelerating-acceptance-2018. In 2017, the National Coalition of Anti-Violence Programs recorded the highest number of anti-LGBT (lesbian, gay, bisexual, and transgender) homicides in the organization's twenty year history, with an 87% increase from 2016. Emily Waters et. al, *A Crisis of Hate: A Report on Lesbian, Gay, Bisexual, Transgender, and Queer Hate Violence Homicides in 2017* (2018), http://avp.org/wp-content/uploads/2018/01/a-crisis-of-hate-january-release-12218.pdf. People who are both Black

and transgender, like Plaintiff John Doe, are particularly likely to face discrimination and violence. Sixty percent LGBT homicide victims in 2017 were Black. *Id.* at 7. In a recent large survey of transgender people, 14% of Black transgender people had been physically attacked in the last year, 70% of Black transgender people who interacted with law enforcement officers were never or only sometimes treated with respect, and 53% of transgender Black men had been sexually assaulted in their lifetime. *See* Sandy E. James et. al, *The Report of the 2015 U.S. Transgender Survey* 186, 203, 205 (2016), http://bit.ly/2BXZcma ("USTS"). Thus, the risk of disclosure places the Plaintiff at risk of serious physical danger and a protective order is necessary to safeguard not just his privacy, but also his safety. These facts provide strong support for the relief sought by this motion.

8. Finally, allowing Plaintiff to proceed under a pseudonym does not harm the public or prejudice Defendants, because this case turns on questions of law and not on the individual characteristics of John Doe. Additionally, John Doe is willing to disclose his identity to Defendants provided a protective order is in place. An order would not compromise the Defendants' ability to conduct their defense.

WHEREFORE, based on the foregoing, this Court should protect Plaintiff's identity by allowing him to proceed as "John Doe" and granting him a protective order.

Dated: February 6, 2018.

Brock Boone
Randall C. Marshall
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
bboone@aclualabama.org
rmarshall@aclualabama.org

Rose Saxe
ACLU LGBT & HIV Project / ACLU Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2605
rsaxe@aclu.org
*Pro Hac Vice Application Pending*