IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARCY CORBITT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-91-MHT-GMB |
| | ) | |
| HAL TAYLOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................... 2

   I. Policy Order 63 Violates the Equal Protection Clause........................................... 3

      A. Policy Order 63 is Subject to Heightened Scrutiny. ...................................... 3

      B. Describing Genital Anatomy on a Driver's License is Not an Important Government Interest.................................................................................................................... 6

      C. No Court Has Found Sufficient Justification for a Policy Preventing Transgender People from Changing Their Sex Designation on Identification........................................ 7

   II. The Government May Not Insulate Itself from Privacy Claims by Making Records Public. .................................................................................................................................. 10

   III. Defendants' Slippery Slope Argument with Regard to Compelled Speech is Unpersuasive .................................................................................................................................. 11

   IV. Plaintiffs Rest on Their Previous Arguments as to the Fundamental Right to Refuse Medical Treatment. .................................................................................................... 12

   CONCLUSION............................................................................................................ 12

Plaintiffs incorporate by reference their statement of facts and arguments from their memorandum of law in support of their motion for summary judgment and memorandum of law in opposition to Defendants' motion for summary judgment.

**I. Policy Order 63 Violates the Equal Protection Clause.**

A. Policy Order 63 is Subject to Heightened Scrutiny.

Defendants argue that the concurrence in *Evans* altered the meaning of *Glenn* and eliminates the need for heightened scrutiny in this case. The Eleventh Circuit held in *Glenn* that discriminating against someone for being transgender is discrimination on the basis of sex under the Equal Protection Clause. It reached that conclusion because "[a] person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011). A concurrence in a later case cannot alter the majority opinion in *Glenn*,[1] but even if it could, the distinction Judge Pryor drew would be functionally irrelevant: there is no air between gender nonconforming behavior and transgender status. "'[T]he very acts that define transgender people as transgender are those that contradict stereotypes of gender-appropriate appearance and behavior.' There is thus a congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms." *Glenn*, 663 F.3d at 1316 (internal citations omitted). The *Glenn* majority and *Evans* concurrence both agree that discriminating against a transgender person who is socially transitioning is discrimination because of sex. *Glenn*, 663 F.3d at 1321 ("his decision to fire Glenn was based on 'the sheer fact of the transition'"); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1260 (11th Cir.), cert. denied, 138 S.

---

[1] Furthermore, "a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc. The Eleventh Circuit decides in this case that it chooses, and will follow, this rule." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Ct. 557, 199 L. Ed. 2d 446 (2017) ("Glenn's claim was successful because Glenn was fired after choosing to 'beg[i]n to take steps to transition.'").

Social transition is exactly what is at stake here. *See* Gorton Decl. ¶ 23, 25. Plaintiffs use female-typical names and pronouns, have female-typical appearances, have updated their sex designations to reflect female on other records and documents, have sought to do so on their driver's licenses, and are prevented from doing so precisely because Defendants do not want to allow them to take this gender-related action that does not accord with Defendants' stereotypes about how people should behave based on their genital anatomy. *See* Pls.' Statement of Facts ¶¶ 3, 36-38, 45, 57-61, 72-73, 77.[2] If gender nonconforming conduct is necessary in addition to transgender identity to make out an equal protection claim based on sex, it is certainly present here. When government officials refuse to allow a transgender person to obtain an identity document that reflects her lived sex because she has not submitted proof of genital surgery, that action has everything to do with sex. *See Glenn*, 663 F.3d at 1314 (describing evidence of constitutionally impermissible motive including employer's statement that "it's unsettling to think of someone dressed in women's clothing with male sexual organs inside that clothing"). Defendants' actions here are motivated by their views on sex in virtually every meaning of that word—gender stereotypes, gender identity, sex-related appearance and behavior, genital anatomy, assigned sex at birth, and sex designation. When the government takes an action that injures someone because of sex, that action is subject to heightened scrutiny, without exception.

Defendants argue that they do not discriminate on the basis of sex because they apply Policy Order 63 to everyone. But it is only transgender people who seek to change the sex designation on their driver's license, and it is only people Defendants perceive to be transgender

---

[2] Plaintiffs mistakenly used the wrong name at the beginning of paragraph 60 in their statement of facts. It was Ms. Clark, not Ms. Eastman, who had gender-affirming surgery in the form of breast augmentation.

who are subject to Policy Order 63 when they do so. Defendants have produced no evidence to suggest that anyone has ever attempted to change a sex designation on a license in a "bad-faith attempt to manipulate a government document," and may not rely on pure speculation in an attempt to evade heightened scrutiny. Also, contrary to Defendants' assertion, *see* Doc. 60 at ECF 12,[3] the only evidence with regard to people with intersex conditions shows that an intersex individual was permitted to change the sex designation on a license without surgery or an amended birth certificate.[4] Defs.' Ex. 16, (D1165). It is reasonable to infer that Policy Order 63 was not applied to that person because ALEA did not perceive the person to be transgender. *See* Doc. 60 at ECF 12 (referring to the intersex person as "non-transgender"). By comparison, Plaintiffs were not permitted to change the sex designation on their licenses with proof that they had gender dysphoria; they were told they had to produce evidence of having had "full" (genital) surgery or an amended birth certificate. Pls.' Statement of Facts ¶¶ 3, 45, 60, 76. But even if Defendants also applied their discriminatory policy to people with intersex conditions, another group perceived as inherently not matching gender norms, that would not make the discrimination any less because of sex, or any more justified.

Defendants also attempt to salvage their policy by comparing the way they manage other descriptors on driver's licenses. They claim that they only allow someone to change other information on a driver's license if it seems plausible based on the person's appearance. Again, that is not comparable to what Defendants do for sex designations. In fact, it is undisputed that the ALEA clerk told Ms. Corbitt that the clerk "never would have known" that Ms. Corbitt was

---

[3] Where the ECF page number differs from the document page number, Plaintiffs use the ECF page number.
[4] Klinefelter's syndrome is a type of intersex condition that occurs when a person is born with XXY chromosomes instead of XY (male typical), XX (female typical), XO (Turner's Syndrome), or another pattern of chromosomes. The document used to change the applicant's sex designation from male to female indicates that the person had XXY chromosomes, consistent with Klinefelter's. It is not a letter from a surgeon stating that sex reassignment surgery has been completed or an amended birth certificate.

transgender had she not seen the record of her previous license. Corbitt Dep. 43:5-7. While relying on a clerk's subjective perceptions (and sex-based stereotypes) would also be constitutionally suspect, the fact that ALEA opts not to use the same method for sex designations as it uses for other descriptive information further shows deliberate disadvantaging of transgender people.

B. Describing Genital Anatomy on a Driver's License is Not an Important Government Interest.

Defendants next argue that even if they do discriminate on the basis of sex, that discrimination is acceptable because it is based on "real" "immutable" differences between men and women. But discriminating on the basis of sex is not an excuse for discriminating on the basis of sex. To justify discrimination on the basis of sex, the government bears the burden of proving that the action substantially furthers an important government interest.

Defendants misunderstand the nature and role of immutability in Equal Protection analysis. Sex is an immutable characteristic because it is an "accident of birth" and forms a core part of one's personhood. *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973); *see also Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 329 (D.P.R. 2018); *Hernandez-Montiel v. I.N.S.*, 225 F.3d 1084, 1095 (9th Cir. 2000), overruled on other grounds by *Thomas v. Gonzales*, 409 F.3d 1177 (9th Cir. 2005). Some sex-based characteristics, like genital and reproductive anatomy, can be changed. *See* Gorton Decl. ¶ 51.  Others, like gender identity, cannot. *See* Br.of Amici Curiae Am. Acad. of Pediatrics, Am. Psychiatric Assoc., Am. College of Physicians, and 17 Additional Medical and Mental Health Organizations in Support of Respondent, *Gloucester Cty. Schl. Bd. v. G.G.*, 2017 WL 1057281 at *8 (U.S. 2017) ("Every person has a gender identity, which cannot be altered voluntarily."). But just because genital and reproductive anatomy *can* change does not mean that the government may *force* people to change it to avoid discrimination.

6

Douglas Laycock, *Taking Constitutions Seriously: A Theory of Judicial Review*, 59 Tex. L. Rev. 343, 383 (1981) ("The constitutional value of personal autonomy with respect to one's body precludes giving constitutional significance to the possibility of escaping discrimination through a sex-change operation; the free exercise clause precludes similar pressure to undergo religious conversion."). And most importantly, the fact that sex is immutable is part of the reason why discrimination on this basis is subject to heightened scrutiny—not a justification for discrimination. *See Frontiero*, 411 U.S. at 686; *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc*., 499 U.S. 187, 197 (1991).

In *Nguyen*, heavily relied on by Defendants, the important government interest was supplying proof of relationship to a U.S. citizen parent for naturalization purposes. *Nguyen v. INS*, 533 U.S. 53, 62 (2001). That justified discriminating on the basis of reproductive anatomy—a sex-related characteristic—because those who give birth have an obvious parental relationship to the child. Defendants' arguments again boil down to a bald assertion unsupported by any evidence that describing a person's genital anatomy on their driver's license is an important government objective simply because they say it is.[5]

C. No Court Has Found Sufficient Justification for a Policy Preventing Transgender People from Changing Their Sex Designation on Identification

Defendants attempt to minimize the salience of the cases that address the same issue presented here by disregarding the reasoning from those cases. Four recent cases have addressed policies preventing transgender people from changing the sex designation on their driver's licenses and birth certificates. *Love v. Johnson*, 146 F. Supp. 3d 848 (E.D. Mich. 2015); *Arroyo*

---

[5] Additionally, Defendants' argument that their policy is not arbitrary because they are obligated to extend full faith and credit to the nonjudicial records of other states falls somewhat flat, given that they do not extend full faith and credit to nonjudicial records in the form of sex designations on the licenses of people from out of state. North Dakota already made a determination that Ms. Corbitt's sex designation should be listed as female for purposes of a driver's license, yet ALEA declined to honor that determination. Pls.' Statement of Facts ¶¶ 38, 45.

*Gonzalez,*, 305 F. Supp. 3d (D.P.R. 2018) *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018);

*K.L. v. State, Dep't of Admin., Div. of Motor Vehicles*, *No. 3AN–11–05431 CI*, 2012 WL

2685183 (Alaska Super. Ct. Mar. 12, 2012); *see also Darnell v. Lloyd*, 395 F. Supp. 1210, 1214

(D. Conn. 1975) (holding that a transgender woman had stated a claim that the state government

"violates the equal protection clause by granting some requests for birth certificate changes while

denying Darnell's request to make her certificate reflect the asserted fact that she is now

female"). All of them have found in favor of the transgender individuals. Defendants attempt to

distinguish the cases by pointing out that some states would not allow any changes to sex

designations and that the court in *Love* ruled on the privacy claim rather than the equal protection

claim. But in each of those four cases, the courts found that the government had not shown any

legitimate government interest in their policies, and in none of them did the court rely on the

surgical status of the transgender litigants.

Defendants argue that three of these cases are distinguishable because they "involved

policies in which transgender individuals were *completely barred* from changing their sex

designation." Doc. 60 at ECF 19. As a preliminary matter, Defendants are mistaken as to the

policy in *K.L.* The policy there was nearly identical to Policy Order 63 and the policy in *Love*: it

permitted changes in sex designations on driver's licenses when an applicant provided

"verification from a doctor that a surgical change was performed." *K.L.*, 2012 WL 2685183, at

*1.

Additionally, the reasoning from *F.V.* and *Arroyo Gonzalez* does not support the

distinction Defendants draw. In *Arroyo Gonzales*, the court made a finding of fact that: "Not

every person suffering from gender dysphoria undergoes the same treatment. From a medical and

scientific perspective, there is no basis for refusing to acknowledge a transgender person's true

sex based on whether that person has undergone surgery or any other medical treatment." 305 F. Supp. 3d at 331. In finding that their rights were violated, the court in that case expressly relied *not* on any medical care the plaintiffs had undergone, but on their right to define themselves. "The right to identify our own existence lies at the heart of one's humanity. And so, we must heed their voices: 'the woman that I am,' 'the man that I am.'" *Id.* at 334. Similarly, in *F.V.*, the court explicitly observed that "[n]ot all transgender people choose to undergo surgery as a part of the transition process. This is due to numerous potential factors, including whether surgery is medically necessary, and personal and financial factors such as lack of insurance coverage." 286 F. Supp. 3d at 1137. It observed that for the policy the state created to be constitutionally permissible, it "must not subject one class of people to any more onerous burdens than the burdens placed on others without constitutionally-appropriate justification—for instance, to apply for a change in paternity information the applicant is not required to submit medical evidence, such as DNA confirmation, to prove paternity or non-paternity." *Id.* at 1141–42.

Defendants also argue that *Love* has no relevance to equal protection analysis because it ruled that the policy there, one essentially identical to the one here, violated the privacy rights of the plaintiffs. Doc. 60 at ECF 19. Tellingly, Defendants fail to make any attempt to distinguish the *Love* analysis as to privacy. Doc. 60 at ECF 6-9. But also, crucially, the court in *Love*, like the courts in each of these cases, went further than a simple ruling that the state's policy was not sufficiently narrowly tailored. Whether using a due process or equal protection analysis, these courts held that the states' policies actually *undermined* the states' claimed interests. *Love*, 146 F. Supp. 3d at 856 ("the Policy undermines Defendant's interest in accurately identifying Plaintiffs to 'promote law enforcement.'") (internal citations omitted); *K.L.*, 2012 WL 2685183, at *7 ("a licensing policy based on the appearance of one's physical features concealed from

9

public view can undermine the accuracy of identification of individuals based on driver's licenses"); *Arroyo Gonzalez*, 305 F. Supp. 3d at 333 (D.P.R. 2018) ("Such forced disclosure… is not justified by any legitimate government interest. It does not further public safety…. To the contrary, it exposes transgender individuals to a substantial risk."); *F.V.*, 286 F. Supp. 3d at 1141-42 (indicating that the state had conceded, and the court agreed, that the policy had no rational basis).

## II. The Government May Not Insulate Itself from Privacy Claims by Making Records Public.

Defendants claim that no information the government chooses to place on a driver's license can ever violate a license holder's right to privacy, because driver's licenses are public records. Doc. 60 at ECF 8. If that were the law, it would permit an end run around the Constitution: a government entity could designate anything it wished to disclose a "public record" and escape its constitutional obligation to avoid infringing on individual privacy rights.

Defendants also argue that Plaintiffs have no privacy interest in preventing disclosure of their transgender status because that status may also be disclosed through a court-ordered name change or an original birth certificate. Doc. 60 at ECF 8. Defendants are mistaken in stating that birth certificates are public records. In fact, they only become unrestricted public records 125 years after the birth, or twenty-five years after the death, of the registrant. Ala. Code § 22-9A-21(f). Until then, only the registrant, the registrant's guardian, the immediate family member of a registrant, or a registrant's legal representative may obtain a copy of a person's birth certificate in Alabama.  Ala. Code § 22-9A-21(b). The demand for birth certificates in daily life is also much less than the demand for driver's licenses. *See* Pls.' Statement of Facts ¶¶ 93-97. And the

fact that the state policy on changing the sex designation on birth certificates has not yet been challenged is no evidence that it is constitutional.

Name change orders, unless sealed, are technically public records, but not readily accessible. One would need to go the appropriate court and specifically request the file for a known individual's name change case to review the order. As already discussed in Plaintiffs' memorandum of law in support of their motion for summary judgment (Doc. 51 at ECF 47-48) and memorandum of law in opposition to defendants' motion for summary judgment (Doc. 58 at ECF 25-26), Plaintiffs risk violence, harassment, and discrimination every time they have to reveal that they are transgender through showing their driver's licenses, in person, to a stranger. That concern is not present when one's name is changed in a court order that would be difficult to find without seeking out the specific Probate Court record. Plaintiffs do not have to show their name change order to strangers at bars, at airports, on dark country roads, at hotels, at car rental locations, at job locations, at pharmacies, at government offices, at colleges, at polling places, at banks, at any place where a credit or bank card might be used, at every location where there might be any interaction with court personnel, or at any location where there might be any interaction with law enforcement officials. All of those situations do, however, call for driver's licenses.

## III. Defendants' Slippery Slope Argument with Regard to Compelled Speech is Unpersuasive.

Defendants argue that, when the Supreme Court and Eleventh Circuit held that the government may not compel people to associate themselves with messages with which they disagree, they could not have meant what they said. *See Janus v. Am. Fed'n of State, Cty., and Mun. Emps.*, 138 S. Ct. 2448, 2464 (2018); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1566 (11th Cir.

1990). Defendants reason that if it were so, anyone could stop the government from putting any sort of information on a piece of identification. Doc. 60 at 10-11.

This argument disregards the reality of what it is to be transgender. Ruling that the government may not compel people to endorse an inaccurate, ideological message about gender that contradicts their core sense of self and puts them at very real risk of harm[6] when the government lacks any compelling (or even legitimate) reason for doing so is not the same as holding that a person has a constitutional right to lie about their age on ID because they would like to buy alcohol while underage.[7] While it is possible that the government may not compel people to convey some other messages on their licenses—as this Court has already held—any other challenges along these lines would have to be considered on their own merits. *See Doe 1 v. Marshall*, No. 2:15-CV-606-WKW, 2019 WL 539055, at *6 (M.D. Ala. Feb. 11, 2019).

## IV. Plaintiffs Rest on Their Previous Arguments as to the Fundamental Right to Refuse Medical Treatment.

Because Defendants have raised no new arguments in an attempt to refute the Plaintiff's due process claim, Plaintiffs rest on the arguments in their previous briefing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for summary judgment on all counts.

---

[6] Defendants request that the Court disregard Plaintiffs' Exhibits 48 and 49 relating to the recent murder of a transgender woman in Alabama. Doc. 60 at ECF 5. Plaintiffs request that the Court take judicial notice of this murder pursuant to Fed. R. Evidence 201(b), because it is not subject to reasonable dispute. The articles attesting to this event could not have been turned over during discovery because they were only published after that time, but their accuracy on this point cannot reasonably be questioned. However, should the court decline to take judicial notice of this recent murder, Plaintiffs have already produced sufficient admissible evidence of the very real danger to transgender women in Alabama and throughout the United States. Pls.' Statement of Facts ¶¶ 51, 62, 64, 78, 79, 82, 83, 85; Pls.' Supplemental Statement of Facts ¶¶ 167-169.

[7] *See United States v. Alvarez*, 567 U.S. 709, 719 (2012) (acknowledging that while outright lying receives First Amendment protection, that protection may be somewhat more qualified); *Gary v. City of Warner Robins*, 311 F.3d 1334, 1339 (11th Cir. 2002) (ruling that restriction on underage drinking survives Equal Protection challenge).

Respectfully submitted this 22th day of March 2019.


                              s/ Gabriel Arkles
                              Rose Saxe
                              Gabriel Arkles
                              ACLU LGBT & HIV Project / ACLU Foundation
                              125 Broad St., 18th Floor
                              New York, NY 10004
                              (212) 549-2605
                              rsaxe@aclu.org
                              garkles@aclu.org
                              *Admitted Pro Hac Vice*

                              Brock Boone
                              Randall C. Marshall
                              ACLU OF ALABAMA
                              P.O. Box 6179
                              Montgomery, AL 36106-0179
                              (334) 265-2754
                              bboone@aclualabama.org
                              rmarshall@aclualabama.org
                              ***Counsel for Plaintiffs Darcy Corbitt, Destiny Clark, and Jane Doe***

## CERTIFICATE OF SERVICE

I certify that on March 22, 2019, I filed the foregoing electronically using the Court's CM/ECF system, which will serve all counsel of record.

s/ Gabriel Arkles