IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARCY CORBITT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:18-cv-91-MHT-SMD |
| ) | |
| HAL TAYLOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM OF LAW
IN RESPONSE TO ORDER FOR ADDITIONAL BRIEFING**

Defendants Hal Taylor, Charles Ward, Deena Pregno and Jeannie Eastman file this reply to Plaintiffs' Memorandum of Law in Response to Order for Additional Briefing (doc. 83).

**1.    Plaintiffs' Case on the Constitutionality of a Bathroom Policy for Transgender Students Is Distinguishable.**

In their response to the Court's order for additional briefing, Plaintiffs rely significantly on the Eleventh Circuit's case in *Adams by and through Kasper v. School Board of St. Johns County*, 968 F.3d 1286 (11th Cir. 2020) (mandate withheld by order of the court on August 10, 2020 and petition for rehearing *en banc* filed August 28, 2020). *See* doc. 83 at 3-4.[1] In *Adams*, the court held it was an unconstitutional violation of equal protection for a school board to require transgender students to use either the bathroom that corresponded to the gender on their enrollment documents or a gender-neutral restroom. 968 F.3d at 1303. But *Adams* is distinguishable both as to the threshold issue of whether Policy Order 63 is a classification on the basis of sex or transgender status and as to whether Policy Order 63 satisfies intermediate scrutiny, assuming it applies.

---

[1] Plaintiffs cite a number of cases from other jurisdictions, but as only *Adams* is binding Defendants limit their discussion to that case.

The parties in *Adams agreed* that the school board's policy discriminated on the basis of sex. *Id.* at 1296. The school board framed it as discriminating on the basis of sex "by requiring biological females to use girls' bathrooms and biological males to use boys' bathrooms." *Id.* (internal quotations omitted). The plaintiff framed it more narrowly as discrimination "against him because, by being transgender, he defies gender norms and stereotypes." *Id.* Given that the school board's policy expressly referenced transgender students, the court agreed with the plaintiff's characterization:

> The School Board's bathroom policy singles out transgender students for differential treatment <u>because</u> they are transgender: "<u>Transgender</u> students will be given access to a gender-neutral restroom and will not be required to use the restroom corresponding to their biological sex." The policy emphasized the School Board's position that no law required it to "allow a <u>transgender</u> student access to the restroom corresponding to their consistently asserted [] gender identity." In this way, the policy places a special burden on transgender students because their gender identity does not match their sex assigned at birth.

*Id.* (emphasis in original).

Here, Policy Order 63 does not discriminate on the basis of sex or transgender status because it references neither characteristic and it does not "place[] a special burden" on transgender licensees "because their gender identity does not match their sex assigned at birth." *Id.* Policy Order 63 expressly references neither sex nor transgender status and applies to anyone who wishes to change the sex on their driver license. It prevents a person in bad faith from changing the sex designation on his license so he can commit identify fraud as equally as it applies to a transgender individual who wishes to make the same change because she no longer identifies with her sex at birth. Nor does it place a "special burden" on transgender licensees "because their gender identity does not match their sex assigned at birth." *Id.* Unlike the categorical prohibition on using the bathroom matching one's gender identity in *Adams*, Policy Order 63 provides a method for

2

transgender licensees to change the sex designation on their license. Again, Plaintiffs disagree with the surgery requirement. But the surgery requirement does not categorically deny transgender individuals the ability to change the sex designation on their driver licenses because their gender identity does not match their sex at birth. Because Policy Order 63 does not apply *only* to transgender licensees or categorically deny them the opportunity to change their sex designation, it does not discriminate against them under *Adams*. Therefore, heightened scrutiny does not apply.

Even assuming intermediate scrutiny does apply to Policy Order 63, *Adams*'s intermediate scrutiny analysis is also distinguishable. As here, the parties agreed that the government had asserted an important government interest. *Id.* at 1297. The school board's interest in *Adams* was "[p]rotecting the bodily privacy of young students." *Id.* But *Adams* provided three reasons for why the board's policy was not substantially related to this interest, each of which is in contrast to the facts of this case.

First, the board's policy of determining what bathroom a student must use was completely unrelated to its goal of assigning students to a bathroom based on biological sex at birth. *Id.* at 1297-99. The board used a student's enrollment documents to determine the student's sex at birth, but the student could list whatever sex they chose and so the forms "say nothing about a student's assigned sex at birth." *Id.* at 1298. By contrast, the default sex designation on an Alabama driver license is the sex designation on an Alabama birth certificate. Doc. 48-7 at 90-92. Unlike the self-identified sex on the student enrollment forms in *Adams*, a birth certificate is the best source of information for determining an individual's sex at birth or default sex designation for physical identification purposes.

Second, while the court acknowledged the anatomical differences between the sexes, it concluded these made no difference in using the bathroom because the plaintiff used the bathroom

3

in a closed stall without anyone seeing him. *Id.* at 1299-01. As a result, the board's policy was unrelated to its interest in preventing students from exposing their genitals to each other. Defendants have already set out four arguments as to why its law enforcement identification interest is not hypothesized or invented *post hoc* in response to litigation. *See* doc. 82 at 7-11. Defendants have already shown that they have an actual, demonstrated interest in a uniform physical description of Alabama license holders, and they reincorporate this argument in response to the second point in *Adams*. *Id.*

Third, the board's bathroom policy "treat[ed] transgender students . . . differently because they fail to conform to gender stereotypes." *Id.* at 1301. This was because the board's policy "presume[d] every person deemed 'male' at birth would act and identify as a 'boy' and every person deemed 'female' would act and identify as a 'girl,'" and there were *no exceptions* to this stereotyped classification. *Id.* Here, the sex designation on a driver license uses the sex designation on a birth certificate as a *default*, and this default is reasonable since Plaintiffs' expert agreed this corresponds to a person's gender identity in 99% of cases. *See* doc. 48-8 at 23-24. And Policy Order 63 does not incorporate gender stereotypes because it does not assume a sex designation on a driver license can never change from the default at birth. Its entire purpose is to provide the circumstances for when a sex designation can change. Thus, Policy Order 63 is substantially related to the State's interest in consistency with birth certificates and law enforcement identification, unlike the bathroom policy in *Adams*.

**2.     Although the Contemporaneous Reason for Adopting Policy Order 63 Was Consistency with Birth Certificate Policy, It Does not Follow that Defendants' Interest in Law Enforcement Identification Is Hypothesized or Invented *Post Hoc* in Response to Litigation.**

Plaintiffs argue that because Policy Order 63's surgery requirement was adopted based on the State's statutory process for amending birth certificates, the State's interest in law enforcement

4

identification is a *post hoc* rationalization incapable of satisfying intermediate scrutiny. *See* doc. 83 at 5-6. But as Defendants have argued, the State's interest in consistency with amending birth certificates is conceptually distinct but not independent of its interest in law enforcement identification. *See* doc. 82 at 10-11. Consistency between the sex designation on a birth certificate and on a driver license is necessarily related to law enforcement identification. *Id.* Therefore, the contemporaneous reason for adopting Policy Order 63—consistency with birth certificates—does not show the law enforcement interest is hypothesized or *post hoc*, but in fact demonstrates the opposite.

**3.     Plaintiffs' Argument That Policy Order 63 Is Inconsistent with the Process for Amending Birth Certificates Is Speculative.**

The parties agree that there are no specified procedures that satisfy the surgery requirement of Alabama Code § 22-9A-19(d). Plaintiffs' argument that judges might not require genital reconstruction surgery and surgery on the upper body before ordering an amendment to a birth certificate is purely speculative. As with any application of a statute, individual judges might interpret and apply requirements slightly differently. But there can be no doubt that Policy Order 63's surgery requirement is consistent with the plain language of § 22-9A-19(d), which requires "that the sex of an individual born in this state has been changed by *surgical procedure*." (emphasis added). Intermediate scrutiny does not require proof that Policy Order 63 corresponds exactly to the way every Alabama circuit or probate judge interprets and applies § 22-9A-19(d). *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001) ("None of our gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance."). Policy Order 63's surgery requirement is clearly substantially related to the statutory surgery requirement for changing the sex designation on birth certificates.

Respectfully submitted,

Steve Marshall,
  *Attorney General*

<u>*s/* Brad A. Chynoweth</u>
Brad A. Chynoweth (ASB-0030-S63K)
  *Assistant Chief Deputy Attorney General*
Winfield J. Sinclair (ASB-1750-S81W)
  *Assistant Attorney General*

Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Brad.Chynoweth@AlabamaAG.gov
Winfield.Sinclair@AlabamaAG.gov

***Counsel for Defendants Hal Taylor, Charles Ward, Deena Pregno, and Jeannie Eastman***

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Randall C. Marshall
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
rmarshall@aclualabama.org

Rose Saxe
Gabriel Arkles
Leslie Cooper
ACLU LGBT & HIV Project/ACLU Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2605
rsaxe@aclu.org
garkles@aclu.org
*Admitted Pro Hac Vice*

                                                      */s* Brad A. Chynoweth
                                                      Counsel for Defendants